Stuart MOORE, Plaintiff,

v.

RAYTHEON CORPORATION, et al., Defendants.

No. 4:03–CV–016–A.

United States District Court, N.D. Texas, Fort Worth Division.

April 13, 2004.

Nathan B. Schattman, Fielding Parker & Beck, Fort Worth, TX, for Plaintiff.

Russell D. Chapman, Matthew R. Scott, Bell Nunnally & Martin, Dallas, TX, for Defendants.

## MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

Came on for consideration the motion of defendants, Raytheon Corporation ("Raytheon"),[1] Hewitt Associates, L.L.C. ("Hewitt"), Raytheon Excess Pension ("Raytheon Non–Qualified Plan"),[2] Raytheon Non–Bargaining Retirement Plan ("Raytheon Qualified Plan"), Hughes Salaried Employees' Excess Benefit Plan ("Hughes Excess Plan"),[3] and Hughes Non–Bargaining Retirement Plan ("Hughes Qualified Plan"), for summary judgment. The court, having considered the motion, the response of plaintiff, Stuart Moore, the reply, the record, the summary judgment evidence, and applicable authorities, finds that the motion should be granted.

### I.

#### Plaintiff's Claims

On January 9, 2003, plaintiff filed his original complaint in this action.[4] Plaintiff alleges:

As an employee of the Honeywell and the Hughes companies,[5] Pl.'s Compl. at 4,

---

1. Plaintiff's complaint names Raytheon Corporation. Defendants contend that the correct name of this defendant is Raytheon Company. Raytheon Defs.' First Am. Answer at 1.

2. Defendants contend that this defendant, named as Raytheon Excess Pension f/k/a Honeywell Excess Plan by plaintiff, is correctly named Raytheon Excess Pension Plan.

3. Plaintiff's complaint names the "Hughes Excess Plan"; defendants contend that the correct name is the Hughes Salaried Employees' Excess Benefit Plan.

4. The court notes that the complaint contains two copies of page 2 and no page number 3. The "Exhibit A" referenced at page 4 is not attached. The case is greatly complicated by the extremely sloppy way in which the complaint is put together and by the sloppy pleading.

5. Plaintiff's complaint does not give the full names of plaintiff's employers.

he participated in the Honeywell Qualified Plan, the Honeywell Excess Plan, the Hughes Non–Bargaining Retirement Plan, and the Hughes Excess Plan. Plaintiff retired in November of 1997. As of December 18, 1997, the Honeywell and Hughes plans were transferred to Raytheon pursuant to a merger agreement. The Honeywell Qualified Plan and the Hughes Non–Bargaining Retirement Plan are both ERISA plans; the Excess Plans are non-ERISA plans. Plaintiff was married to Shirley Moore ("Shirley") from April 12, 1957, to February 28, 1978. A California court signed a qualified domestic relations order ("QDRO") assigning Shirley significant fractional interests in the Honeywell Qualified Plan, but not any interest in the Honeywell Excess Plan. In April 2000, Raytheon combined the Excess Plans into the Qualified Plans, which had two adverse effects on plaintiff. First, Shirley would be entitled to monies derived from the Excess Plans. Second, the Qualified Plans paid benefits of a smaller amount over a longer period of time, adversely impacting plaintiff's finances. Raytheon promised to file a lawsuit in California seeking a modification or clarification of the QDRO as applied to the Honeywell Qualified Plan, but failed to do so.

Plaintiff seeks: An order declaring that he is entitled to a recalculation of benefits under the plans; an order separating the Excess Plan benefits from the Qualified Plan benefits and requiring specific performance of the obligations under the Excess Plan; equitable relief in the form of a decree directing defendants to pay plaintiff all of his damages resulting from defendants' breaches of "contractual fiduciary and statutory duties"; judgment for all benefits to which he is entitled; attorneys' fees and costs; and, the maximum permissible prejudgment and post-judgment interest on all sums awarded. Pl.'s Compl. at 9.[6]

## II.

### *Grounds of the Motion*

Defendants assert nine grounds in support of their motion for summary judgment. First, Hewitt is entitled to judgment on plaintiff's claim for benefits under 29 U.S.C. § 1132(a)(1), because it was merely a party in interest and took no action about which plaintiff complains. Second, all defendants except the Raytheon Qualified Plan and Raytheon Non–Qualified Plan are entitled to judgment on the § 1132(a)(1) claim, because plaintiff can only bring a claim for benefits against those plans. Third, all defendants are entitled to judgment on said claim because the Raytheon Qualified Plan Administrator properly interpreted the QDRO. Fourth, Hewitt is entitled to judgment on plaintiff's claim for breach of fiduciary duties under 29 U.S.C. § 1132(a)(3), because (a) Hewitt took no action about which plaintiff complains; (b) Hewitt is not a fiduciary for ERISA purposes; and (c) Hewitt exercised no control over either plan. Fifth, all defendants are entitled to judgment on the § 1132(a)(3) claim because (a) plaintiff cannot maintain such a claim where he has a claim for benefits; (b) when Raytheon amended the Raytheon Qualified Plan, no defendant engaged in a fiduciary action; and (c) when Raytheon amended the Raytheon Qualified Plan, none of the defendants breached any fiduciary duties owed to plaintiff. Sixth, all defendants are entitled to judgment on any breach of fiduciary duty claim plaintiff premises on the Raytheon Non–Qualified Plan because, as a top hat plan, that plan is exempt from

---

**6.** In his summary judgment response brief, plaintiff explains that he is asserting state law claims for breach of contract, an alternative claim under ERISA, and a claim for breach of fiduciary duty. Pl.'s Br. at 13–14.

ERISA's fiduciary duty requirements. Seventh, all defendants are entitled to judgment on plaintiff's state law claims because they are preempted by ERISA. Eighth, Hewitt is entitled to judgment on plaintiff's claims related to the Raytheon Non–Qualified Plan because Hewitt took no action about which plaintiff complains. And, ninth, all defendants are entitled to judgment on plaintiff's claims related to benefits under the Raytheon Non–Qualified Plan, because none of the defendants amended the Plan and, moreover, Raytheon properly calculated plaintiff's entitlement to benefits under the Plan.

### III.

### *Objections to the Summary Judgment Evidence*

Plaintiff includes in his summary judgment response an objection to part of one paragraph of defendants' summary judgment evidence. Pl.'s Br. at 10. And, defendants have filed a motion to strike portions of plaintiff's summary judgment evidence. The court is not striking any summary judgment evidence, but will give such evidence the weight, if any, it deserves.

### IV.

### *Applicable Summary Judgment Principles*

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s][its] claim[s]." *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir.1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Simmons v. Lyons,* 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita,* 475 U.S. at 597, 106 S.Ct. 1348. *See also Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir.1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

## V.

### *Undisputed Evidence*

The following is an overview of evidence pertinent to the motion for summary judgment that is undisputed in the summary judgment record:

Plaintiff began working for the Training and Control Systems Division of Honeywell Corporation in November 1966. In January 1989, Hughes Aircraft Corporation acquired the division and plaintiff continued as an employee of Hughes. Plaintiff retired in 1997. After he retired his former employer merged with Raytheon. Plaintiff became a participant in the Raytheon Qualified Plan, which assumed responsibility for the pensions payable to plaintiff and Shirley, that is, the pensions subject to the QDRO. The Raytheon Qualified Plan is a defined benefit pension plan under 26 U.S.C. § 401(a).

Plaintiff also participates in the Raytheon Non–Qualified Plan as a former employee of Hughes. The Raytheon Non–Qualified Plan is a non-qualified employee pension benefit plan intended to restore to participants in the Raytheon Qualified Plan that portion of their pension that would otherwise be payable, but could not be paid, due to limitations imposed by 26 U.S.C. §§ 415 and 401(a)(17) and to pro-

vide supplemental retirement benefits to a select group of management or highly compensated employees within the meaning of ERISA. (At the time plaintiff retired, he was a "highly compensated employee" as defined by 26 U.S.C. § 414(q) and, as chief executive officer of his division, a management employee.) The Plan states that it is a new plan that replaces and supersedes all prior excess benefit plans. Defs.' App. at 818.

Plaintiff married Shirley on April 12, 1957, and they divorced on February 28, 1978. In 1996, the California court in which plaintiff and Shirley were divorced entered a QDRO that divided plaintiff's accrued vested benefits in the Raytheon Qualified Plan.[7] The QDRO did not mention or purport to assign to Shirley any benefits from the Hughes or Honeywell Excess Plans. Accordingly, all of plaintiff's benefits from the Raytheon Non–Qualified Plan were, and are, plaintiff's alone.

In 1996, Congress enacted the Small Business Job Protection Act of 1996, which repealed 26 U.S.C. § 415(e), effective for plan years beginning on or about January 1, 2000.[8]

The language of § 415(e) had not merely been incorporated by reference, but was included in the Raytheon Qualified Plan. To implement the repeal,[9] Raytheon

---

**7.** The plan was then known as the Hughes Aircraft Company Non–Bargaining Retirement Plan.

**8.** Section 415(e) had placed a cap on the amount payable to a participant in a qualified pension plan. Thus, Hughes established an excess plan to make up the difference. According to a summary plan description given to plaintiff:

> All qualified retirement plans are obligated to comply with the IRS limitations. But in order to keep participants whole, Hughes has voluntarily established a nonqualified plan, called the Hughes Salaried Employees Excess Benefit Plan (the "Excess Plan"), to make up any benefit impacted by government limits. The Excess Plan provides a

benefit equal to the difference between your benefit from the Hughes Non–Bargaining Retirement Plan computed without any limits, and the actual benefit payable from the Plan after applying the IRS limitations. For example, if your benefit payable from the Plan before the limits under the 5–year period certain option is $15,000 per month and your actual benefit after applying the limits is $12,000, the Excess Plan would provide a benefit of $3,000 per month.

Pl.'s App. at 25.

**9.** In accordance with guidance published by the Internal Revenue Service, amendment of the plan was made retroactive. That is, the plan was amended on February 28, 2002, with an effective date of January 1, 2000.

amended the Raytheon Qualified Plan to omit the language of § 415(e). As a result, plaintiff's benefits under the Raytheon Qualified Plan were increased effective January 1, 2000, and his benefits from the Raytheon Non–Qualified Plan were decreased by an actuarially equivalent amount; and, by reason of the QDRO, Shirley was entitled to a portion of the increased payments. Plaintiff protested.

The Raytheon Qualified Plan administrator[10] determined that the increased payments under the Raytheon Qualified Plan came within the QDRO's purview and that Shirley was entitled to her share. The administrator notified plaintiff of its decision, but has withheld the payment of the increased amount to Shirley, pending resolution of this action.[11]

Plaintiff appealed the administrator's action. The administrator proposed filing an application with the California court for a clarification of the QDRO. The administrator attempted to make such a filing, but it was rejected by the clerk of court since the divorce case had been closed. Plaintiff filed this action before the administrator could file a proper motion in the California court.

Hewitt is nothing more than a "party in interest" for ERISA purposes, as it only provided administrative services to the other defendants. Hewitt has no liability for any damages that might be awarded.

## VI.

### Law Applied to the Facts

#### A. Why Hewitt is a Party.

Defendants maintain that there is no reason for Hewitt to be a party to this action. It is undisputed that Hewitt took no action about which plaintiff complains; that it is not a fiduciary for ERISA purposes; and, that it exercised no control over the plans at issue. Plaintiff admits that Hewitt has no liability for any damages and that it is only a party because it "will be involved in performing" any changes in the plan or benefits to be paid to plaintiff. Pl.'s Br. at 13. Plaintiff does not cite any authority in support of the contention that Hewitt is a necessary party.

#### B. Whether Plaintiff's State Law Claims are Preempted.

■ Defendants contend that plaintiff's state law claims are preempted, because the Raytheon Non–Qualified Plan is a top hat plan under ERISA. 29 U.S.C. § 1101(a)(1). Plaintiff cannot dispute that the plain language of the Raytheon Non–Qualified Plan establishes that it is a top hat plan. Instead, he appears to argue that the Plan could mean different things to different participants and that it must be an unfunded excess benefit plan under 29 U.S.C. § 1002(36) as to him. Pl.'s Br. at 16. He cites no authority to support his contention. He admits that the Raytheon Non–Qualified Plan "absorbed and sponsored the existing Hughes and Honeywell Plans." Id. And, as previously noted, the Raytheon Non–Qualified Plan states that it replaces and supersedes all other excess benefit plans. Defs.' App. at 818. Because a top hat plan is subject to ERISA's enforcement provisions and is an employee benefit plan within the meaning of ERISA, all state law claims that relate to the plan are preempted. See Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); Carr v. First Nationwide Bank, 816 F.Supp. 1476, 1486 (N.D.Cal.1993).

The court notes that it makes no difference whether the plan from which plaintiff

**10.** The administrator of the Raytheon Qualified Plan is Raytheon.

**11.** Shirley has apparently not been notified that any payments are being withheld.

receives payments of excess benefits is described as a top hat plan or an excess benefit plan. If the language of the Hughes Excess Plan governs, plaintiff still is not entitled to any benefits under that plan. The sole purpose of the Hughes Excess Plan was to provide a benefit equal to the difference between the amount that would have been paid from the Qualified Plan had there not been the limit of § 415(e) and the actual benefit payable after applying § 415. Pl.'s App. at 25. After the repeal of § 415, the Hughes Excess Plan served no purpose. Plaintiff's argument that the Hughes Excess Plan was irrevocably committed to pay him any sum certain is belied by the language of the Plan itself.

### C. *Plaintiff's ERISA Claims.*

 Plaintiff admits that ERISA does not provide a cause of action for claimed benefits against any party other than the benefit plans themselves. Pl.'s Br. at 18. He then argues that he has been improperly denied benefits, but he cites no authority to support such a proposition. The summary judgment record establishes that plaintiff has not been improperly denied any benefits. The language of the Raytheon Qualified Plan was amended in accordance with guidance published by the Internal Revenue Service following repeal of § 415(e). Plaintiff is not happy with the result, but there is no authority for the proposition that defendants should bear the burden of amending plaintiff's QDRO to his satisfaction.

### D. *Breach of Fiduciary Duty.*

Claims for equitable relief under 29 U.S.C. § 1132(a)(3) are only available when a plaintiff has no other avenue of relief under ERISA. *Varity Corp. v. Howe,* 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Tolson v. Avondale Indus., Inc.,* 141 F.3d 604, 610 (5th Cir. 1998). Here, plaintiff's primary claim is for benefits; therefore, a private action for breach of fiduciary duty is not available. *Rhorer v. Raytheon Eng'rs & Constructors, Inc.,* 181 F.3d 634, 639 (5th Cir.1999). Even if a breach of fiduciary duty claim could be asserted, amendment of the Raytheon Qualified Plan does not give rise to such a claim. *See Lockheed Corp. v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996).

## VII.

### *Order*

For the reasons discussed herein,

The court ORDERS that defendants' motion to strike be, and is hereby, denied; that defendant's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on his claims against defendants; and, that such claims be, and are hereby, dismissed with prejudice.